USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

           -v-                         1:20-cr-523-GHW

MEDGHYNE CALONGE,                 MEMORANDUM
                  Defendant.      OPINION AND ORDER

------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

On August 16, 2021, a jury convicted Medghyne Calonge of two crimes. Both crimes involved the deletion of files maintained in a computer system used by her employer, 1-800-Accountant (the "Company"). The Company now seeks over $490,000 in restitution under the Mandatory Victims Restitution Act of 1996 (the "MVRA"), 18 U.S.C. § 3663A. This amount, the Company claims, represents the value of the computer system that Ms. Calonge damaged, the costs incurred to restore it, and attorneys' fees that it allegedly incurred by participating in the Government's investigation into and prosecution of Ms. Calonge. Because the Court concludes that the Company has not sufficiently proven that the amount that it claims represents the "value" of the destroyed property, or that the legal fees that the Company has claimed are compensable under the MVRA, the Court grants the application in part and denies it in part.

## II.    BACKGROUND

In October of 2020, the Government charged Ms. Calonge in a two count indictment. Dkt. No. 2 (the "Indictment"). The Indictment alleged that Ms. Calonge intentionally damaged computers in violation of 18 U.S.C. § 1030(a)(5)(A), 1030(c)(4)(B)(i), and 2, and that she had recklessly damaged computers in violation of 18 U.S.C. § 1030(a)(5)(B), 1030(c)(4)(B)(i) (I), and 2.

The facts alleged in the Indictment in support of the charges were straightforward.  Ms. Calonge was alleged to have been terminated from her employment on July 28, 2019.  "Following her termination and continuing until on or about June 29, 2019, CALONGE misused administrative access provided to her as an employee of the Company to log in to the Applicant Tracking System and damage the integrity of the Company's computer systems by deleting the Company's records, including job postings created by the Company to advertise employment opportunities at the Company and thousands of applications for employment at the Company submitted to the Company via the Applicant Tracking System."  Indictment ¶ 3.

The case was tried to a jury in August 2021.  At trial, the Government proved the allegations outlined in the Indictment.  Ms. Calonge worked as a senior manager in the Company's human resources department.  In that role, she had access to the programs used by the Company to manage its HR functions.  Those systems included JazzHR, a database system used by the Company to track job applicants.  The Company selected JazzHR from among a group of software providers in May 2017 to manage its recruitment process.  The Company paid JazzHR a flat fee to use its system.

Ms. Calonge had administrator access to the JazzHR system.  After her termination, the Government proved at trial, Ms. Calonge deleted a substantial amount of information from the JazzHR system.  According to the defendant, the log of deletions shows 17,780 deletions using Ms. Calonge's user identification in the days following her termination, largely, it appears, deletion of applicant resumes.  After the deletions were discovered, the Company took a number of steps to recover the data that had been deleted and to be able to use the JazzHR system for future hires.  By July 1, new data was being added by the Company to the JazzHR database, including new resumes.  JazzHR continued to work with the Company to fix the database.  On July 23, 2019, JazzHR communicated to the Company that it had imported all "historical jobs" into the database.

The Court sentenced Ms. Calonge on December 16, 2021.  At sentencing, the Court

deferred a determination regarding the amount of restitution owed to the Company.  The Court did

so because among other things the "victim has presented a letter requesting certain amount of

restitution without affidavits or legal arguments tailored to the requirements of the MVRA."  Dkt.

No. 101 ("Sentencing Tr."), at 42:14-17.  "Again, in the victim statement that I received from the

victim, the victim asserts that the measurable cost to repair Ms. Calonge's criminal conduct totaled

$497,340, but I don't have a breakdown or affidavit supporting that amount.  It may be that some of

that amount is not properly compensable under the MVRA."  *Id.* at 42:19-24.

The Court commented further on the sufficiency of the information provided to the Court

in connection with the Company's request before scheduling further briefing.

> Again, I've reviewed the December 1, 2021 . . . letter submitted by the victim.
> The letter does not attach what I'll describe as facts . . . [T]here are no affidavits, no
> billing records and the like.  It's not clear to me that the application is written with
> the requirements of the MVRA in mind.  In other words, it's not clear to me that the
> restitution request submitted by the victim has considered the provisions of the
> MVRA, and that it has provided me with a view of the appropriate amount of
> restitution, based on the governing law.
>
> As I suggested during our conversation earlier with respect to the loss amount, I
> need more information, I believe, with respect to the legal costs that are requested
> for reimbursement here.  Here, the sum requested by the victim includes $121,043 in
> legal costs which are described as the legal costs "from first contact with the
> government through to the preparation of this victim impact statement."  But, as you
> analyze the MVRA and the recent Supreme Court precedent, you'll see the MVRA
> only covers compensation for such expenses in connection with the government
> investigation or criminal proceedings.  Costs associated with investigations tak[en]
> independently, apart from the government, are not as I understand it compensable.
>
> So I do not have enough information from the materials submitted in the victim's
> letter to me to determine which legal costs are properly compensable under the legal
> framework established under the MVRA.  So what I'm going to do is to ask for
> written submissions regarding the application for the determination of the
> reimbursement amount requested as restitution.  I'd ask that that be presented in the
> form of a motion with supporting affidavits presenting the facts that you want the
> Court to consider in determining the appropriate amount of restitution.

Sentencing Tr. at 44:14-45:21.  Having provided the Government and the Company with this clear

statement regarding the limitations of the Company's initial submission, the Court provided an

3

opportunity for the Company to provide supplemental briefing and affidavits with respect to its application.

The Company submitted its supplemental submission in support of its restitution application on January 18, 2022 (the "Application"). Dkt. No. 94. The Application was three single spaced pages long and was supported by a single short affidavit by Erin Galliher, the Company's counsel (the "Galliher Decl."). Dkt. No. 95. The Galliher declaration contained only facts about counsel's legal fees. No affidavits or factual support was provided to the Court regarding any other aspect of the Company's request. And the Application did not point to other evidentiary support for the requested award, such as by referring the Court to relevant provisions of the trial testimony or exhibits that might provide the foundation for the Court's evaluation of the request.

In the Application, the Company requested reimbursement of several categories of asserted losses under the MVRA. First, the Company claims all of the costs incurred in building and developing the database—amounting to nearly $300,000. The Application describes that amount as consisting of "$140,000 in employee hours, $8,034 in fees to the company that owned the database, and $143,642 in advertising jobs that synced to the system." Application at 2. The Company asserts that "amount represents the value of the system at the time it was rendered useless as a result of Ms. Calonge's destruction, and is properly compensable under the MVRA." *Id.* However, the Company provides no information regarding why the value of the system should be measured as the sum of the costs of creating and operating it during the years prior to Ms. Calonge's criminal act.

Second, the Company claims $81,271, which is the amount that it asserts the Company was forced to spend "to return the system to a state of operability." *Id.* "These further expenditures included $14,8271 paid to Operations, Inc., a third-party acquisition firm that the Company used to assist it with hiring while the database was down; $29,658 in advertising expenses; $1,986 in fees to the provider of the database; and $34,800 in employee time spent rebuilding the system." *Id.* The

4

Company again provided no further detail regarding these expenses, and provided no affidavits in support of this aspect of its request.

Finally, the Company requests that the Court order that Ms. Calonge pay it $117,043.34, representing the attorneys' fees billed by its counsel. The Company did not provide its billing records in support of its claim for attorneys' fees. Instead, it provided an affidavit of counsel asserting that Mintz, the Company's counsel, had opened a new matter "when the criminal investigation into Ms. Calonge's actions was initiated and Mintz was engaged to work with the Company on that investigation . . . ." Galliher Decl. ¶ 3. The Company's counsel avers that:

> The entirety of that amount reflects work performed in furtherance of this investigation and prosecution, including, in general terms, consultations and interviews with the FBI and Assistant U.S. Attorneys; preparing and producing documents to the Government; responding to the Government's requests for documents and other information; preparing witnesses for trial testimony; consulting with Company representatives about the criminal case; and preparing the Victim Impact Statement and this restitution request.

> The only narrative entries on the bills for client-matter number 047596-017 that do not contain explicit reference to the FBI, the U.S. Attorneys' Office, the criminal complaint or case, or the Government generally are those that reflect work done in furtherance of the investigation and prosecution of this case. As a general example, time billed for tasks such as responding to emails represents time spent responding to emails *about this case.*

Galliher Decl. ¶¶ 4, 5. Counsel for the Company argues that "if not for Ms. Calonge's conduct and the government's subsequent investigation and prosecution, client-matter number 047596-017 would not exist, and there would have been no need for the Company to incur any of the fees billed to that matter. As a result, all of those fees are necessarily appropriate for a restitution award . . . ." Application at 3.

Ms. Calonge opposed the Company's restitution application on a number of grounds. Dkt. No. 98 (the "Opposition"). While focused on particular aspects of the Company's application, Ms. Calonge's opposition really focused on some basic legal principles—namely, the obligation of the party seeking restitution to prove the value of the lost or damaged property, and the amount of

compensable expenses.  First, Ms. Calonge challenged the Company's proposition that the value of

the damaged system could be determined by summing the costs expended by the Company to build

and develop it—as well as to use it during the time of its operation.  Ms. Calonge argues that the

salaries of workers who used the system over two years are not compensable.  She argues, among

other things that "awarding restitution for the time employees spent using the system would be

improper."  Opposition at 4.  Ms. Calonge also challenges the Company's request for

reimbursement of the operating fees that it paid to JazzHR between May 2017 and June 2019—a

time when the Company was effectively using the system.  Ms. Calonge reasonably argues that

because the Company got the benefit of those expenditures it should not be compensated for them.

Similarly, Ms. Calonge challenges the Company's application for reimbursement of $143,642 in

advertising expenditures made by the Company over the years to advertise for jobs that ultimately

populated the HR system.

      Ms. Calonge concedes that the costs of restoring the JazzHR system is compensable, but

again, questions whether the charges presented by the Company have been proven to be

compensable.  First, she challenges the request for the reimbursement of $14,827 in payments to an

outside vendor hired to help the company with hiring, arguing that such costs are "unrelated to

restoring the recovered property."  *Id.* at 5.  Second, she argues that the nearly $30,000 claimed by

the company for advertising costs between July 1, 2019 and December 31, 2019 is not properly

compensable.  "The expenses do not reflect the value of the property lost, and the Company

presumably received value for its post-deletion ads.  In the weeks after the deletions, for example,

over 4,000 new resumes were added to the system by prospective candidates."  *Id.* at 6.  Finally, she

challenges the propriety of the Company's request for payment of $34,800 of employee salaries who

worked in the JazzHR system:  "For the reasons described above, simply using the Jazz HR System

is not compensable under the MVRA.  While time spent restoring the database – that is, redoing

work that had previously been done and had been lost; for example, creating new templates or job descriptions – is compensable, the Company has provided no basis for calculating the amount of time worked or the proper cost associated with that work." *Id.*

And, finally, Ms. Calonge challenged the sufficiency of the evidence presented in support of the Company's request for reimbursement of its attorney's fees.  Ms. Calonge made the grounds for her concern very clear:  because the Company failed to provide the Court with specific billing records, she argued, the Court could not determine which expenses were appropriate under *Lagos.* "Without a careful review of the fees, the Court will not be in a position to make a determination as to the reasonableness or necessity of a particular expense." *Id.* at 7.  And in a supplemental letter, Ms. Calonge pointed the Company's counsel to a recent decision by Judge Gardephe in *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2022 WL 452385 (S.D.N.Y. Feb. 14, 2022).  There, Judge Gardephe reiterated that "*Lagos* thus 'limit[s] restitution to expenses incurred for investigatory activities that the government expressly and specifically invited or requested.'" *Id.* at *5 (quoting *United States v. Napout*, No. 15-CR-252 (PKC), 2018 WL 6106702, at *4 (E.D.N.Y. Nov. 20, 2018)).

In response to Ms. Calonge's opposition, the Company submitted a three page letter, with no additional evidence.  Dkt. No. 100 (the "Reply").  Instead, the Company presented arguments regarding why the requested costs are reimbursable without factual enhancement.  Notwithstanding the specific arguments made by Ms. Calonge, the Company elected not to present its billing records to the Court.  Instead, it stated that "should the Court wish to review Mintz's bills for the relevant matter, we will provide them to the Court *in camera.*" *Id.* at 2 n.1.  In sum, the Company argued that all of the costs for which it sought reimbursement "are costs that the Victim *would never have had* were it not for Ms. Calonge's criminal activity here.  As such they are costs that the Defendant should bear." *Id.* at 1.

### III.    LEGAL STANDARD

The MVRA provides that a sentencing court "shall order" defendants convicted of specified

crimes, including "an offense against property under this title . . . , including any offense committed

by fraud or deceit," to "make restitution to the victim[s] of the offense" in addition to "any other

penalty authorized by law."  18 U.S.C. §§ 3663A(a)(1); (c)(1)(ii).  Under the statute, a "'victim' means

a person directly and proximately harmed as a result of the commission of an offense for which

restitution may be ordered."  *Id.* § 3663A(a)(2).  "Thus, in determining to whom a defendant owes

restitution, the statute requires the court (1) to identify the 'offense' of conviction and (2) to

ascertain whether the putative 'victim' was 'directly and proximately harmed' by the defendant's

commission of that 'offense.'"  *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021).  Not all

harms caused by a defendant's offense are compensable under the MVRA—only those articulated in

the statute.  *United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014) ("If Congress intended to

include all harms directly and proximately caused by a defendant's offense, it could have done so

with wording more simple and categorical.").[1]

"[R]estitution may be imposed only for losses arising from "'the specific conduct that is the

basis of the offense of conviction.'""  *United States v. Goodrich*, 12 F.4th at 228 (quoting *United States v.*

*Vilar*, 729 F.3d 62, 97 (2d Cir. 2013)).  The "MVRA requires that the 'offense' of conviction 'directly

and proximately harmed' the victim entitled to restitution.  Courts have interpreted this language to

impose cause-in-fact and proximate cause requirements, respectively."  *Id.* at 229.  "Regarding cause

in fact, the defendant's conduct must have been a necessary factor in bringing about the victim's

---

[1] Significantly, the types of "losses" cognizable in restitution proceedings are distinguishable from those that are cognizable under the United States Sentencing Guidelines.  *United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013); *see also United States v. Germosen*, 139 F.3d 120, 130 (2d Cir. 1998) ("Of course, an amount-of-loss calculation for purposes of sentencing does not always equal such a calculation for restitution.").  Among other things, the Sentencing Guidelines permit the court to consider "intended loss" in addition to "actual loss."  U.S.S.G. 2B1.1; *see also Germosen*, 139 F.3d at 130.

harm." *Id.*  Regarding proximate cause, the "'basic question . . . is whether the harm alleged has a sufficiently close connection to the conduct,' which we evaluate based on whether that harm was 'foreseeable' to the defendant." *Id.* (quoting *Robers v. United States*, 572 U.S. 639, 645 (2014)).

In a case involving loss or destruction of property, the MVRA provides that an order of restitution "shall require" the defendant to return the lost property or "if return of the property . . . is impossible, impracticable, or inadequate, pay an amount equal to- (i) the greater of- (I) the value of the property on the date of damage, loss, or destruction; or (II) the value of the property on the date of sentencing, less (ii) the value (as of the date the property is returned) of any part of the property that is returned.  18 U.S.C. § 3663A(b)(1)(B).  "Thus, the MVRA unambiguously tells a court what to value (the property lost; the property returned) and even when to value it (in the case of the loss value, property is evaluated 'on the date of the damage, loss, or destruction,' or 'on the date of sentencing,' whichever is greater . . . .)."  *United States v. Boccagna*, 450 F.3d 107, 114 (2d Cir. 2006) (internal citations omitted).

Because the statute is silent regarding how the referenced property is to be valued, "the law appears to contemplate the exercise of discretion by sentencing courts in determining the measure of value appropriate to restitution calculation in a given case." *Id.*  Thus, the Second Circuit construes "'value' as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purpose." *Id.* at 115.  "In determining the appropriate measure of value for property relevant to restitution, a district court must consider that the purpose of restitution is essentially compensatory:  to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." *Id.*  "In most circumstances, fair market value will be the measure most apt to serve this statutory purpose." *Id.*  "Notwithstanding the general reliability of fair market value as a measure of property value, in some circumstances other measures of value may more accurately serve the statutory purpose to ensure a crime victim's

recovery of the full amount of his loss." *Id.* at 116.

The statute mandates that the court "order restitution to each victim in the *full amount* of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C.A. § 3664(f)(1)(A) (emphasis added). "However, the award cannot "allow[ ] a victim to recover more than his due." *United States v. Qurashi*, 634 F.3d at 703.

In addition to compensating the victim for the value of property lost or damaged, the MVRA also requires defendants to "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.* § 3663A(b)(4). In *Lagos v. United States*, the Supreme Court held that the words "investigation" and "proceedings" in section 3663A(b)(4) of the MVRA "refer to government investigations and criminal proceedings." 138 S. Ct. 1684, 1690 (2018). In *United States v. Afriyie*, 27 F.4th 161 (2d Cir. 2022), the Second Circuit narrowly construed the statute to "hold that restitution is appropriate only for expenses associated with criminal matters. Civil matters—including SEC investigations, even if closely related to a criminal case—do not qualify."

The *Lagos* Court concluded that the MVRA "does not cover the costs of a private investigation that the victim chooses on its own to conduct." *Lagos*, 138 S. Ct. at 1690. "*Lagos* thus 'limit[s] restitution to expenses incurred for investigatory activities that the government expressly and specifically invited or requested.'" *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2022 WL 452385, at *5 (S.D.N.Y. Feb. 14, 2022) (quoting *United States v. Napout*, No. 15-CR-252 (PKC), 2018 WL 6106702, at *4 (E.D.N.Y. Nov. 20, 2018)).

A victim may recover attorney's fees that it incurred while helping the government investigate and prosecute a defendant. *United States v. Afriyie*, 27 F.4th at 163; *see also United States v.*

*Amato*, 540 F.3d 153, 161 (2d Cir. 2008), <u>*abrogated on other grounds by* Lagos v. United States</u>, 138 S. Ct. 1684, 201 L. Ed. 2d 1 (2018).  However, for a victim to recover such fees, "the statute's other strictures" must be met.  *U.S. v. Afriyie*, 27 F.4th at 163.  "This Court concludes that restitution under the MVRA is available for attorneys' fees incurred in connection with services that were invited, required, requested, or otherwise induced by the Government."  *United States v. Avenatti*, 2022 WL 452385, at *8 (collecting cases).

"[T]he MVRA requires only a reasonable approximation of losses supported by a sound methodology.  As explained by the First Circuit, 'the preponderance standard must be applied in a practical, common-sense way.  So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution.'"  *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013) (quoting *United States v. Savoie*, 985 F.2d 612, 617 (1st Cir. 1993)).  The government bears "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense" and "any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e).[2]

## IV.   DISCUSSION

The Company is the victim of Ms. Calonge's criminal conduct.  As such, it is entitled to

---

[2] The Court pauses to address the issue of the timeliness of the restitution award.  Title 18 U.S.C. § 366(A)(d)(1)(5) provides that, "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."  The Court sentenced Ms. Calonge on December 16, 2021; therefore, under § 366(A)(d)(1)(5), the Court was required to reach a final determination of the Company's losses no later than March 16, 2022.  The Second Circuit has explained that the purpose behind the statutory 90-day limit on the determination of a victim's losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets."  *United States v. Douglas*, 525 F.3d 225, 252 (2d Cir. 2008).  Therefore, "an extension of the proceedings beyond the 90-day period provides no basis for vacating the restitution order unless the defendant can show that the extension caused him actual prejudice."  *Id.* at 252-53.  To the extent Ms. Calonge contends that she has experienced "actual prejudice" as a result of the delay, she is directed to file a supplemental submission describing the basis for the asserted prejudice.  Any supplemental submission is due no later than June 9, 2022.

restitution in the amount of its proven losses, as well as the proven necessary and reasonable legal expenses incurred at the request or invitation of the Government.  But the Company's application does not prove that it is entitled to the full amount of restitution that it claims.  The Company's application does not present evidence, such as affidavits, in support of substantial aspects of its claims, notwithstanding the Court's invitation that it do so.  The Company's arguments regarding the law ignore that not all harms resulting from a criminal act are compensable under the MVRA, arguing the statute requires reimbursement of all "expenditures that the Victim would *never* have had to make at all if not for the criminal conduct of Ms. Calonge."  Reply at 3; *c.f. United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014) ("If Congress intended to include all harms directly and proximately caused by a defendant's offense, it could have done so with wording more simple and categorical.")  When the deficiencies in its submission were pointed out in the Opposition, the Company elected not to cure them, as detailed below.

### a. Value of the JazzHR System

The Company has not proven the value of the JazzHR system on the date of its destruction by any method.  Broadly speaking, the Company has asked that the Court conclude that the value of the system on the date that it was damaged was the cost required to create and run it prior to that date.  As the Second Circuit has observed in other circumstances, however, "[t]he use of cost to measure 'value' for MVRA purposes in this case has several absurd consequences."  *United States v. Reifler*, 446 F.3d 65, 138 (2d Cir. 2006).

The Company asks that the Court order that Ms. Calonge pay it $291,676 in restitution for this category of asserted losses.  In the Company's proffer, that amount represents the amount that the company had invested in "the building and development of the database ($140,000 in employee hours, $8,034 in fees to the company that owned the database, and $143,642 in advertising jobs that synced to the system . . . .)"  Application at 2.  According to the Company's argument, "that amount

represents the value of the system at the time it was rendered useless as a result of Ms. Calonge's destruction, and is properly compensable under the MVRA." *Id.* The Company provides no legal citation or evidence to support this argument.

The Company's argument that the amount spent to build and run the database prior to the damage wrought by Ms. Calonge represented its value is not persuasive. A simple example shows why: imagine that a company bought a van for $50,000 to transport supplies. It used the van for that purpose for two years, paying $15,000 to fuel and service the van over that span. Then the van was stolen, forcing the company to replace it. Does the reader think that the value of the two year old van when it was stolen was $65,000—representing its original cost, plus its cost of operation over two years? That's the equivalent of the Company's request. Does the reader think that the value of the two year old van is the same as it was on the date that it rolled off of the lot? The Court does not. Instead, the Court would expect that the cost of operating the vehicle in prior years would not be viewed as part of its present value, and would not expect that the fair market value of a two year old used van would the same as when it was first purchased. Of course, the Company's database was not a van[3], but this example illustrates why Company's claim that the cost of building and operating an asset represents its value is not self-evident.

To the extent that the Company paid for services for which it obtained other value, the cost of those services has not been proven to be part of the value of the JazzHR system when it was damaged. As Ms. Calonge argues, the Company received value from the use of the system over the time it was in operation—part of the salaries for which the Company claims reimbursement appear to have been simply involved in the operation of the system, not merely constructing it. Similarly, the fees paid to the vendor, JazzHR, were fees paid to operate the system. The Company received benefit from those payments while the system was in operation. The Company has not proven that

---

[3] It may be that databases actually increase in value over time, but the Court has no evidence of that here.

those payments should be considered to represent the value of the JazzHR system when it was damaged.

Similarly, the entire amount that the Company paid to advertise jobs that were routed through the JazzHR system have not been proven to represent the value of the JazzHR system when it was damaged. As the defendant cogently argues "the Company received full value for the vast majority of ads that were posted and responded to by prospective candidates, dating back to May 2017." Opposition at 5. The Company has not proven that these advertising expenditures, for which it obtained prior benefit, represent the value of the system.

The Company has not made any effort to present the Court with evidence of an alternative measure of the value of its damaged database system, relying instead on an argument that all costs expended to build and operate the system in the past represented its value. The Company presented this argument without citation. The argument alone is not enough to carry the day. As the van example illustrates, it is far from self-evident that the cost of buying and operating an asset in the past represents its present value.

Moreover, as Ms. Calonge points out, evidence was presented at trial showing that much of the functionality of the system was restored after it was damaged. Government Exhibit 204 shows that the system was being used to conduct activity after Ms. Calonge deleted data from the system. Defense counsel counted 4,245 new resumes that were posted to the system between July 1, 2019 and July 25, 2019. Similarly, the evidence shown at trial, and the email from Shaun Starkey to Amy Gaspari attached to the Opposition, show that by July 23, 2019, JazzHR was able to provide the Company with the historical information for the entries deleted by Ms. Calonge.

These facts undermine the premise of the Company's arguments—namely that the value of the system was zero after Ms. Calonge's criminal act. It is not reasonable for the Court to infer that the value of the system was completely eliminated as a result of Ms. Calonge's criminal conduct.

That is because the evidence shows that the Company was able to make continuing use of the system and that the historical data was repopulated.  Back to the van example:  if one's van was damaged in an accident, but could be used normally after repairs, the van's value on the date it was damaged was not zero.  There is no doubt that Ms. Calonge damaged the Company's database system, but she did not total it.  The Company has not presented any basis for the Court to determine the value of the damaged system without making the counterfactual assumption that it was damaged beyond repair.

The Court requires a factual basis upon which to rest a determination regarding the value of the system before it was damaged and its value after it was damaged.  The applicant has failed to prove by a preponderance of the evidence that the amount requested is the value of the damaged property.  The Company's request rests on the argument that the cost of the system's construction and operation before Ms. Calonge's crime represented its value, and that the system was damaged beyond repair.  Neither of those predicates has been proven, and the Court is not able to draw those as reasonable inferences from the evidence presented to it.

### b.  Cost to Restore the JazzHR System

The costs incurred by the Company to restore the JazzHR system are properly compensable under the MVRA if proven.  However, only a subset of the expenses requested by the Company have been proven to have been compensable.

### i.  $34,800 in Employee Costs

The Company's request for the reimbursement of employee costs expended in the repair of the system is adequately supported by the trial record.  Counsel for the Company stated in its Application that "restoring the system took a total of around 1,000 employee hours to rebuild the database . . . .  Using a conservative estimate of $30 per hour, the employee rebuild effort cost the company about $30,000.  In addition, the Company's HR manager and other employees needed to

take time out of their normal work to investigate and document the deletion, at a total cost

(calculated by hours spent times the $30 hourly rate) of $4,800."  Application at 4.

In her Opposition, Ms. Calonge argued that there was insufficient factual support for this

portion of the Company's request.  Opposition at 6 ("the Company has provided no basis for

calculating the amount of time worked or the proper cost associated with that work").  And Ms.

Calonge argued that the JazzHR did the work to restore the system, rather than the Company's

employees.  *Id.* ("But here, the Company's employees did not spend $34,800 worth of their time in

restoring the HR System.  In fact, the restoration was performed by JazzHR, at that company's

expense.").  Despite these clear objections, the Company chose to present no additional factual

support for this component of their requested fee award in its Reply, and did not point the Court to

the relevant trial testimony to support the application.  However, as with the other components of

the Company's requests, the Court has reviewed the evidence presented at trial independently to

evaluate whether the record evidence supports the application.

Testimony presented at trial supports the request for reimbursement of this amount.  Amy

Gaspari testified at trial regarding the additional work done by employees of the company to restore

the database.  Trial Transcript, Dkt. No. 65, at 193:12-18.  Ms. Gaspari confirmed that this work was

"separate and apart from what JazzHR did in recreating the database."  *Id.* at 193:2-5.  Ms. Gaspari

created a memo describing the number of hours employees it took for Company employees to

rebuild the system.  Trial Transcript, Dkt. No. 67, at 517:22-23.  Lindsay Kush testified that she used

the information from that memorandum, and applied a $30 hourly rate to the hours that the

employees worked to restore the system, which she concluded was a conservative estimate of the

value of the workers' time.  *Id.* at 518:2-11.  The Court credits this testimony and concludes that the

$34,800 in employee time incurred to restore the Company's system is compensable.

ii.   **$14,827 in Payments to Operations, Inc.**

The Company has not proven that it is entitled to reimbursement of the amount paid to

Operations, Inc.  The Company's counsel describes Operations, Inc. as "a third-party acquisition

firm that the Company used to assist it with hiring while the database was down . . . ."  Application

at 2.  Consistent with counsel's proffer, the evidence presented at trial showed that these payments

do not represent "losses."  The payments were not made to restore the damaged system, but rather,

to provide ancillary support for the Company.[4]  Those costs are not compensable under the MVRA

because they did not compensate for "losses" as defined in the MVRA.  *See, e.g. United States v.*

*Maynard*, 743 F.3d 374, 380 (2d Cir. 2014) ("The wages for the temporary staff do not fall within the

enumerated harms of § 3663A(b).  The temporary staff wages did not compensate for losses such as

destruction of property or funeral expenses, and were not necessary to the prosecution or

investigation of the offense.").

The Company's legal argument in support of its request is unpersuasive.  The Company

argues that "payments made to a third party to compensate for the Victim's disadvantage caused by

the database destruction . . . relates directly to efforts to restore the system to its normal

functionality, and those are properly compensable as property loss under the MVRA."  Reply at 2.

The Company does not argue that these are costs that are for the purpose of restoring the system,

instead they "relate directly" to those efforts.  The Company does not muster an argument, much

less evidence, that the costs were incurred to restore the property—merely that they "related to" that

effort.  That alone is not sufficient.  The evidence at trial made clear that these costs do not reflect

---

[4] Trial Transcript, Dkt. No. 66, at 196:7-14 ("So, because we were in a precarious spot in terms of to ramp up so quickly for tax season and the timing and everything, we decided to use external recruiting sources that we wouldn't have done otherwise because we did have a robust recruiting environment that was humming and working.  So, we hired a couple of firms to provide candidates to us on a contingency basis. So, one of those companies was Operations Inc. and Operations Inc. is an HR consulting firm that I had used mostly for trainings at that point.  But they had a recruiting arm.  So, I elicited help from them.").

the "value" of the damaged database system, and that the costs were not incurred in order to restore

its operations.  Hiring an external vendor to provide support is a cost that the Company would not

have incurred but for the defendant's crime, but again, not everything that relates to the defendant's

crime is compensable under the MVRA.  *United States v. Maynard*, 743 F.3d at 379.

      iii.    **$29,658 in Advertising Expenses**

The Company has also failed to prove that the amount that it expended to advertise jobs

following Ms. Calonge's criminal conduct is properly compensable.  The Company proffers that it

incurred $29,658 in advertising expenses in the period after Ms. Calonge's crime.  Application at 2.

Counsel for the Company describe those as "effectively sunk costs while the database was not

operating in the way it was intended . . . ."  Reply at 2.  As a result, the Company argues that these

costs too "relate[] directly to efforts to restore the system to its normal functionality . . . ."  *Id.*

Here too, the Company has not provided sufficient information to the Court to prove that

the costs are reimbursable in the amount requested.  As Ms. Calonge points out in her opposition,

the evidence at trial showed that new resumes were posted to the system in the period after Ms.

Calonge's crime.  So some of those advertising expenses was incurred for new jobs posted after Ms.

Calonge's spree of deletions.  Ms. Calonge's crimes have not been proven to have been the

proximate cause for these later advertisement costs.  To the extent that some portion of these

advertising expenses were incurred to restore the system, as opposed to supporting the normal

operations of the Company, the Court cannot determine what that amount is from the information

presented to it here.  The Court does not conclude from the evidence before it that the full amount

of the Company's advertising expenses were incurred to restore the database.  There is evidence that

was not the case, and the Company has not supported its arguments with sufficient facts for the

Court to find that the amount requested has been proven to be compensable, or to conclude that a

lesser award is appropriate.

### iv.    $1,986 in Fees to Database Provider

The $1,986 in fees paid to the provider of the database have not been proven to be compensable under the MVRA.  It appears that this amount represents the Company's regular periodic payments to the database provider.  The Company has not presented evidence that the amount was increased in order to pay for the cost of restoring the damaged system.  This request amount appears to be the regular cost of the system that the Company paid periodically—a cost that was not directly or proximately caused by Ms. Calonge's crimes, but, rather, one that the Company would have incurred regardless of the defendant's crimes.  As a result, it is not compensable under the MVRA.

### c.  Legal Fees

Because the Company has not provided the Court detailed billing records, the Court cannot make a finding regarding the amount of attorneys' fees that should be paid as restitution.  As described above, the Company is entitled to reimbursement of legal fees incurred for actions requested or invited by the Government.  It is not entitled for the reimbursement of legal fees or expenditures incurred on the course of its own investigation.

Some subset of the fees requested by the Company is reimbursable, but on this record, the Court cannot determine how much.  The Company's affidavit describes the work conducted by its attorneys as work "in furtherance of this investigation and prosecution."[5]  In particular, as described above, the Company describes the billed work as follows:

> The entirety of that amount reflects work performed in furtherance of this investigation and prosecution, including, in general terms, consultations and interviews with the FBI and Assistant U.S. Attorneys; preparing and producing documents to the Government; responding to the Government's requests for

---

[5] The *Lagos* Court required that compensable time be incurred "during" participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.  The Company's affidavit does not track the language from Lagos, averring instead that the work was done "in furtherance of" the investigation and prosecution.  The Company's choice to deviate from the language of *Lagos* suggests that it is aware that its request is not fully consistent with the requirements of the case.

documents and other information; preparing witnesses for trial testimony; consulting with Company representatives about the criminal case; and preparing the Victim Impact Statement and this restitution request.

Galliher Decl. ¶ 4.[6]

Based on this description, some of the time billed is clearly compensable.  For example, time spent responding to requests from the Government is compensable, as is time working on the restitution request.  But some of this time is not clearly compensable, such as "consulting with Company representatives about the criminal case."  That work may not have been done at the request of the Government to assist in its prosecution, but, rather, only because of the existence of the criminal case, at the behest of the Company or its counsel.

And the affidavit's description of the work performed does not purport to be comprehensive; it describes the listed categories of work as "including, in general terms" the listed items.  *Id.*  Because the Company describes the work as "including" the listed items, the Court cannot conclude that the listed categories describe all of the time worked.  And because the Company describes the list as describing its counsel's work "in general terms," the Court cannot conclude that the list is precise.  Without more detailed billing records, the Court simply cannot tell what portion of the fees requested was necessary and incurred as a result of the request or incitement of the Government, as opposed to work that it chose on its own to conduct as a result of Ms. Calonge's criminal conduct.  A substantial portion of the requested fees may be compensable, but the Court determine tell how much from the evidence presented, and it will not guess.[7]

---

[6] Evidence was presented at trial regarding the Company's attorneys' fees.  The amount presented to the Court at trial was $57,355.  The testimony at trial describing those fees does not establish that they are properly compensable under the MVRA.  The testimony does not allow the Court to determine whether the fees were incurred as a result of requests or incitement by the Government, as opposed to the Company's own internal investigation.  *See, e.g.,* Sentencing Tr., Dkt. No. 67, 517:12-16 ("Q. With respect to Line Item Four, how did you calculate legal fees?  A. I reviewed all of our legal fees from our lawyers and broke it down and just included the fees regarding the investigation into the deletion of JazzHR.").

[7] The Court is not holding that complete billing records is required in all circumstances.  The affidavit presented here, however, describing the work performed in "general" terms "including" listed items, some of which are not clearly compensable, is insufficient.  The Company's erroneous arguments to the effect that all economic consequences of Ms.

The Company was well aware of the fact that the lack of billing records might be an issue.

The Court said so at sentencing.  A cursory review of the applicable case law would reveal the same.

The Opposition pointed out the deficiencies in the evidence presented in support of the application

for fees in plain language.  Yet in its Reply, the Company chose to stand pat and not to present

additional facts to the Court.  Unfortunately, while the Court is sympathetic to the Company, which

is the victim of Ms. Calonge's crimes, the Court cannot change the burden of proof, and cannot do

the work of the Government and the Company to meet it.[8]

## V.   CONCLUSION

Ms. Calonge harmed the Company.  The Company incurred costs that are compensable

under the MVRA.[9]  But on the record before it, the Court cannot determine even a reasonable

---

Calonge's criminal conduct are compensable, together with the affidavit's variance from the language in *Lagos*, as
described above, contribute to the Court's unwillingness to rely on the Galliher declaration on its own.

[8] The Company writes in its reply that "should the Court wish to review Mintz's bills for the relevant matter, we will
provide them to the Court *in camera*."  Reply at 2 n.1.  Again, while sympathetic to the victim, the Court is not the lawyer
for the victim or the Government.  Counsel chooses what information to put before the Court.  At the end of trial, a
lawyer does not say to the court "I rest.  That is, unless you tell me that I haven't proven my case yet.  If so, please tell
me what else I need to give you in order to prove my case before I rest."  That is functionally what counsel for the
Company has done here—asking the Court to tell it what it needs to do in order to meet its burden.  The Court noted
the lack of billing records at sentencing and provided the Company an opportunity to present a supplemental application
for restitution after having done so.  The Opposition made very clear what the issue was.  The Company chose not to
address the objection by providing facts to meet the objection.

The Court observes that a portion of footnote 1 to the Company's Reply, explaining its choice not to present its billing
records in support of the Application, does not fully capture the applicable law regarding privilege.  The Company
argues that its billing records are protected by the attorney-client privilege in their entirety.  The Company quotes the
Court's opinion in *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 1: 17-cv-8987-GHW, 2021 WL 4481853, at
*2 (S.D.N.Y. Sept. 29, 2021), for the proposition that "time records and billing statements that are 'detailed in showing
services, conversations, and conferences between counsel and others' to such an extent that 'to allow access to [the]
material would disclose . . . trial strategy."  The Court stands by that statement, but as the remainder of its decision in
*Flatiron* makes clear, attorney's billing records are not privileged in their entirety—only those portions that reveal such
privileged information.  As described in *Flatiron*, privileged components of billing records can be the subject of targeted
redactions.  *See also Bernstein v. Mafcote, Inc.*, 43 F. Supp. 3d 109, 114 (D. Conn. 2014) ("The Second Circuit has
'consistently held that, absent special circumstances, client identity and fee information are not privileged [...]  While
consultation with an attorney, and payment of a fee, may be necessary to obtain legal advice, their disclosure does not
inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously.'  Similarly, 'the
attorney-client privilege does not extend to billing records and expense reports' unless they 'reveal the motive of the
client seeking representation, litigation strategy, or the specific nature of the services provided, such as researching
particular areas of law[...]'.  Other courts in this circuit have also found that, 'Administrative documents including billing
records, expense reports, correspondence, bills, ledgers, statements, time records, diary entries, time sheets, billing
reports and telephone logs fall under the attorney-client privilege only if they reveal litigation strategy or other
confidential information.'" (internal citations omitted)).

[9] The work required to prove the amount of a restitution award is clearly outlined in the caselaw.  As quoted at length

estimate of the compensable losses and expenses incurred by the Company with respect to all but the $34,800 of employee time allocated to restoring the damaged database system.  Accordingly, the Court hereby orders that Ms. Calonge pay restitution in the amount of $34,800 to the Company. The Court will issue an amended judgment consistent with this determination.

      SO ORDERED.

Dated: June 1, 2022
New York, New York

                                      _____
                                          GREGORY H. WOODS
                                    United States District Judge

---

above, the Court explained to the Company's counsel at sentencing the kind of materials that would be expected to support its request for restitution.  The Court's remarks included the following:

> Again, I've reviewed the December 1, 2021, letter submitted by the victim.  The letter does not attach what I'll describe as facts, there are no affidavits, no billing records and the like.  It's not clear to me that the application is written with the requirements of the MVRA in mind.  In other words, it's not clear to me that the restitution request submitted by the victim has considered the provisions of the MVRA, and that it has provided me with a view of the appropriate amount of restitution, based on the governing law.  As I suggested during our conversation earlier with respect to the loss amount, I need more information, I believe, with respect to the legal costs that are requested for reimbursement here.

Sentencing Tr. at 44:14-45:21.  The Opposition highlighted the continued deficiencies in the Company's renewed application, but the Company still chose to present limited information to support its request.