.UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                       :

MEDGHYNE CALONGE,                :
                                         :

                       Petitioner,   :

                                         :

                -against-         :

                                         :

UNITED STATES OF AMERICA,      :

                                         :

                       Respondent.   :
                                         :
------------------------------------------------------------------ X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 7/29/2025

1:24-cv-8988-GHW
1:20-cr-523-GHW

<u>MEMORANDUM</u>
<u>OPINION & ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

       Medghyne Calonge was fired.  Her employer believed that Ms. Calonge was not performing her job well and that she had lied to her boss.  Ms. Calonge did not go quietly.  Instead, she worked to destroy one of her employer's computer systems—deleting large volumes of data and replacing an email template with a clear message: "ffffffffff uuuuuuuuu."  Ms. Calonge's conduct was not merely malicious.  It was criminal.  A jury found Ms. Calonge guilty after being presented with overwhelming evidence of her guilt, including electronic logs showing her manipulation of the computer system.  Ms. Calonge's appeal was denied by the Second Circuit Court of Appeals.

       Just one day before the deadline to file a petition for habeas corpus, Ms. Calonge sent a petition to the Court by overnight mail.  In it, Ms. Calonge argues in conclusory fashion that her counsel was ineffective, and attempts to relitigate the issue that she raised in her appeal—whether venue was appropriate in this Court, given that Ms. Calonge was physically located in Florida when she committed her crime.  Because Ms. Calonge's petition lacks any factual support, and because her attempt to relitigate the issue raised on appeal is barred, Ms. Calonge's petition is DENIED.

## II.    BACKGROUND

### A.    The Indictment[1]

In October of 2020, the Government charged Ms. Calonge in a two-count indictment. Dkt. No. 2 (the "Indictment"). The Indictment alleged that Ms. Calonge intentionally damaged computers in violation of 18 U.S.C. §§ 1030(a)(5)(A), 1030(c)(4)(B)(i), and 2, and that she had recklessly damaged computers in violation of 18 U.S.C. §§ 1030(a)(5)(B), 1030(c)(4)(A)(i)(I), and 2. The facts alleged in the Indictment in support of the charges were straightforward. Ms. Calonge was alleged to have been terminated from her employment on July 28, 2019. "Following her termination and continuing until on or about June 29, 2019, CALONGE misused administrative access provided to her as an employee of the Company to log in to the Applicant Tracking System and damage the integrity of the Company's computer systems by deleting the Company's records, including job postings created by the Company to advertise employment opportunities at the Company and thousands of applications for employment at the Company submitted to the Company via the Applicant Tracking System." Indictment ¶ 3.

### B.    Arrest and Appointment of Counsel

Ms. Calonge was arrested on October 9, 2020. Dkt. No. 6. She was presented before Magistrate Judge James L. Cott on October 19, 2020. *Id.* Martin Cohen of the Federal Defenders of New York was appointed to represent her in the case. *Id.* Marisa Cabrera, also of the Federal Defenders office, represented Ms. Calonge as well. Ms. Cabrera first appeared before the Court in a conference on August 4, 2021. Dkt. No. 18. And she entered a notice of appearance on August 6, 2021.

---

[1] All citations to the docket refer to the criminal case unless otherwise noted.

### C.    The Trial

Trial began on August 9, 2021.  Dkt. No. 63.  During the trial, the Government established that Ms. Calonge severely damaged the applicant tracking system (the "Applicant Tracking System") used by her former employer (the "Victim").  The Victim was a New York City-based accounting firm.  The Victim had two offices:  a headquarters office in Manhattan, and a call center in St. Petersburg, Florida.

The Victim was a fast-growing company with a high degree of employee turnover.  So, the Victim contracted an outside company to support its human resources needs.  That contractor developed and hosted the Victim's Applicant Tracking System.  The Victim used the Applicant Tracking System to manage its recruiting and hiring process.  The Applicant Tracking System was an online system.  Employees of the Victim were given access to the system with varying degrees of administrative control over the system.  Among the Victim's employees who had access to the system was Amy Gaspari, the Victim's Director of People Operations, who worked from the company's headquarters in New York City.

Ms. Gaspari hired Ms. Calonge to work as a human resources manager at the Victim's office in St. Petersburg, Florida in January 2019.  Ms. Calonge was given access to the Applicant Tracking System.  Ms. Gaspari testified at trial that she was optimistic that Ms. Calonge would succeed in the role.  But, she testified, Ms. Calonge was unable to handle her responsibilities and did not integrate well into the office's culture.  Just a couple of months after Ms. Calonge started at the job, Ms. Gaspari put together a performance improvement plan for Ms. Calonge that addressed some of the issues that she had identified with Ms. Calonge's performance.  Ms. Calonge was upset that she had been presented with a performance improvement plan and refused to sign it.

In mid-June 2019, Ms. Calonge had an argument with one of her colleagues.  In reaction, Ms. Calonge used her access to the Applicant Tracking System to downgrade the colleague's access

to the Applicant Tracking System.  Ms. Gaspari asked Ms. Calonge if she was responsible for the downgrade; Ms. Calonge denied that she was.  But the system's records, which Ms. Gaspari later received, showed that Ms. Calonge was responsible for the downgrade.  Ms. Gaspari concluded that Ms. Calonge had lied to her.

Consequently, on Friday, June 28, 2019, Ms. Gaspari terminated Ms. Calonge.  Ms. Gaspari called Ms. Calonge from the Victim's New York City office.  Ms. Calonge was in St. Petersburg, Florida.  Two sales managers were in the room with Ms. Calonge.  One of them handed Ms. Calonge a termination letter.  The sales managers saw Ms. Calonge repeatedly hit the "delete" key on her computer while she was being terminated.

Even though Ms. Calonge had previously modified a colleague's access to the system after a spat and was seen hitting the delete button on her computer during her termination, the Victim did not immediately revoke Ms. Calonge's privileges to access the Applicant Tracking System.  During the weekend after she was terminated, Ms. Calonge logged into the Applicant Tracking System and deleted more than 17,000 job applications from the database.  She revoked the access privileges of many other employees of the Victim, including several employees in the Victim's Manhattan office.  Ms. Calonge modified entries in the system in a way that presumably reflected her outrage:  she modified an email template for applicants to say "ffffffffff uuuuuuuuu;" she changed the name of the Victim company to "SOBTCS."

Ms. Gaspari discovered the damage to the Applicant Tracking System that Ms. Calonge had wrought the following Monday.  Ms. Gaspari received an email from a Manhattan-based member of the Victim's human resources team, who told Ms. Gaspari that she could not access the system.  Ms. Gaspari logged into the system herself and found that information in the system had been deleted.  Ms. Gaspari obtained a log of the actions taken within the Applicant Tracking System that showed that Ms. Calonge was responsible for the damage.  The log showed that Ms. Calonge had deleted

thousands of applicants from the system, that she had modified information in the system, and that she had revoked others' access to the system.

Ms. Calonge's destructive outburst had severe negative consequences for the Victim and its employees. Her actions harmed the Victim's ability to hire. And it cost the Victim both time and many thousands of dollars to place the system back into operation.

The trial itself was short. After jury selection, the Government placed the evidence of Ms. Calonge's criminal conduct before the jury over the course of less than three full trial days. During the course of the trial, the Government offered the testimony of nine witnesses, including Ms. Calonge's supervisor—Ms. Gaspari—and several other former colleagues. The Government also offered extensive documentary evidence proving Ms. Calonge's criminal conduct, including the computer logs showing the destructive actions that Ms. Calonge took in the Applicant Tracking System.

Ms. Calonge's case in chief was short. Ms. Calonge choose not to testify and called no witnesses to support her case in chief. She did, however, introduce a stipulation and two exhibits. Throughout the trial, Ms. Calonge was ably represented by the office of the Federal Defenders, who, among other things, cross examined Government witnesses and challenged the introduction of several of the Government's exhibits.

At the close of the Government's evidence, the defendant made a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The motion rested on the defendant's contention that venue had not been proven because there was "no testimony or evidence presented that any of the data physically resided in the Southern District of New York." Trial Tr. at 566:4-6. The Court denied that motion at that time, *id.* at 572:24-575:15, and denied the motion again after the defense rested, *id.* at 604:23-24.

The Court charged the jury on Friday, August 13, 2021. The Court's instructions to the jury included a comprehensive description of the Government's obligation to prove that venue was appropriate in the Southern District of New York. *Id.* at 714:14-715:22. Among other things, the Court instructed that venue would lie in this district "if you find that any part of the crime took place here, whether or not the defendant herself was even in this district." *Id.* at 715:7-10. In particular, the Court informed the jury that "if you find that the defendant's actions caused damage to a protected computer, venue is proper wherever that damage occurred." *Id.* at 715:11-13. Neither party objected to the Court's instructions regarding venue.

The jury returned its verdict the following Monday, August 16, 2021. The jury found that Ms. Calonge was guilty on both counts. Dkt. No. 59.

### D.    The Sentencing

The Court sentenced Ms. Calonge on December 16, 2021. Ms. Calonge had a criminal history category of I and an offense level of 18. As a result, the sentencing guidelines recommended a sentence of 27 to 33 months imprisonment. During the sentencing hearing, the Court outlined the serious nature of Ms. Calonge's crime.[2] The Court acknowledged Ms. Calonge's limited prior criminal history—a single prior probationary sentence for uttering a forged check. The Court noted

---

[2] Sentencing Tr., Dkt. No. 91, at 33:17-34:19 ("So, let me begin by talking about the nature of the offense here. As our jury found, Ms. Calonge's acts were criminal. She took those acts. Her employer had issues with her work and fired her. In response, Ms. Calonge knowingly acted to harm her former employer, as she did so by accessing databases that were essential for the company's hiring efforts and destroying a substantial amount of important data. Her message to her former employer could not have been more clearly conveyed than through her revision to one e-mail template. The one highlighted by counsel for the United States at trial that read FFFFUUUU, etc.

Her actions may have begun as a spur-of-the-moment reaction to her firing. There was testimony that she very promptly began hitting the delete button on the computer while she was being or shortly after she was informed she had been terminated. But the deletions and manipulations were proven to have occurred after Ms. Calonge left her office, showing there was time for her to cool off. She didn't. Instead, she chose to take the acts that led us here.

Of course, many people are fired, many are likely infuriated by their employer's decision. What makes this case so extraordinary is that Ms. Calonge took a series of intentional actions to actually damage her employer, actions that made this into a viable criminal action. So Ms. Calonge's actions were intentional, they were criminal, they caused real damage to her employer, as the victim has attested to here, and as we heard about at trial. So this was a serious offense, one that had a serious impact on the victim.").

Ms. Calonge's issues related to mental health, for which she was seeking treatment.  The Court weighed several other factors in Ms. Calonge's favor, including the non-violent nature of the crime, her educational achievement, and her family obligations as a single mother in crafting the sentence that the Court found to be sufficient but no greater than necessary:  time served, to be followed by three years of supervised release.  Judgment was entered on December 17, 2021.[3]  Dkt. No. 89.

### E.    The Appeal

Ms. Calonge filed a notice of appeal on December 21, 2021.  Dkt. No. 90.  Her appeal raised just one question:  whether the Government's evidence at trial was legally sufficient to prove that venue in the Southern District of New York was proper.  *See United States v. Calonge*, 74 F.4th 31, 33 (2d Cir. 2023).  On July 14, 2023, in a carefully reasoned opinion, the Second Circuit held that venue was appropriate in the Southern District of New York and upheld Ms. Calonge's conviction.  *Id.* The Supreme Court of the United States denied Ms. Calonge's petition for certiorari on November 13, 2023.  *Calonge v. United States*, 144 S.Ct. 409 (Mem) (2023).

### F.    Ms. Calonge's 2255 Petition

Ms. Calonge's petition to vacate her sentence under 28 U.S.C. § 2255 was docketed on November 19, 2024 (the "Petition").  Dkt. No. 109.  Ms. Calonge signed the Petition on November 1, 2024.  Petition at 14.  The document was stamped as received by the Court on November 19, 2024.  In addition to the Petition itself, the docket contains the UPS envelope that was used to send the Petition to the Court.  The envelope indicates that the "Ship Date" for the package was November 12, 2024, and that it was sent to the correct address of the Clerk of Court of this District by "UPS NEXT DAY AIR."  Dkt. No. 109 at ECF page 15.  The envelope also provided a UPS tracking number.

---

[3]  Following additional briefing, the Court ordered that Ms. Calonge pay her Victim $34,800 in restitution.  Dkt. No. 104 (amended judgment); *see United States v. Calonge*, 2022 WL 1805852, at *1 (S.D.N.Y. 2022).

In her Petition, Ms. Calonge presents three grounds in support of her claim for relief. First, she asserts that she received ineffective assistance of counsel. Petition at 5. As factual support for this argument, Ms. Calonge asserts broadly: "Failure to investigate potential witnesses or evidence was made, failure to object to inadmissible evidence, failure to present crucial aggressive defense arguments, and some of the reasons, all of which could have significantly impacted the outcome of the case and find the defendant not guilty if handled properly." *Id.* Ms. Calonge offers no specific facts in support of her argument. For example, she offers no details regarding the key interviews that her counsel failed to conduct, the type of additional forensic analysis or expert consultations that might have been helpful to her case, or the nature of the allegedly ineffective cross-examination of witnesses by her counsel.

Second, Ms. Calonge asserts in her Petition that the Court did not have the authority to "hear the case in the first place, as the crime allegedly occurred in Florida and not in New York, and did not occur within the court's geographical jurisdiction." *Id.* at 6. She also asserts that she was "not properly served as Miranda rights were no [sic] read during the arrest by the federal agents . . . ." *Id.* Ms. Calonge noted in her Petition that she had raised this issue on appeal. *Id.* at 7.

Finally, Ms. Calonge asserts a catch-all claim that the "conviction or sentence is otherwise subject to collateral attack . . . ." *Id.* at 8. The supporting facts for this assertion overlap with the broad statements raised by Ms. Calonge in her first two grounds for relief, including alleged ineffective assistance of counsel in that "the Attorneys failed to raise important objections during trial . . . to investigate crucial evidence that could have significantly impacted the case. Evidence that demonstrates the testimonies [sic] of key witnesses was false or unreliable . . . ." *Id.* And she reiterated the argument that the "court lacked proper jurisdiction to hear the case." *Id.* As with the other grounds asserted for habeas relief, Ms. Calonge offered no specific facts regarding the alleged deficiencies in the conduct of her counsel or the evidence admitted at trial.

The Government filed its opposition to the Petition on January 24, 2025. Dkt. No. 111 (the "Opposition"). In its Opposition, the Government argues that the Petition should be denied without a hearing for several reasons. First, the Government argues that the Petition is time-barred. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Ms. Calonge had one year from the date on which the Supreme Court denied certiorari to file a petition for habeas corpus. According to the Government, Ms. Calonge was required "to bring her Motion on or before November 13, 2024. Instead, Calonge filed her Motion on November 19, 2024. As such, Calonge's Motion is untimely." Opposition at 6.

Second, the Government argues that Ms. Calonge has not provided sufficient support for her ineffective assistance and catch-all claims: "Calonge's bald assertions find no support in the record, and the factual basis for her various claims is not specified anywhere in her Motion." *Id.* at 7. And, finally, the Government argues that Ms. Calonge's argument that the Court lacked jurisdiction over her case is barred by the mandate rule. *Id.*[4]

The scheduling order governing the Petition required that Ms. Calonge file any reply to the Government's response within thirty days. Dkt. No. 110 ("Movant shall have thirty days from the date on which Movant is served to file a response. Absent further order, the motion will be considered fully submitted as of that date."). The Government filed a certificate of service of its Opposition on Ms. Calonge on January 24, 2025. Dkt. No. 112. Therefore, her response was due

---

[4] The Government does not argue that the Petition is moot. The Court understands that Ms. Calonge's term of supervised release was still ongoing at the time that the Petition was filed. But her term of supervised release ended on December 15, 2024, just over a month after her Petition was due, and well before the deadline for the Government to file its opposition to the Petition. A petition for habeas corpus relief is not moot for so long as the defendant is subject to restraints on her liberty, such as supervised release. *See Janakievski v. Executive Director, Rochester Psychiatric Center*, 955 F.3d 314, 319 (2d Cir. 2020). "Moreover, a habeas petition 'does not necessarily become moot' when the order it challenges is no longer in effect, so long as the petitioner suffers 'some concrete and continuing injury' or 'collateral consequence' resulting from the challenged order." *Id.* (quoting *U.S. v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999)). Because Ms. Calonge challenges her conviction, there is a presumption that such collateral consequences exist. *See Nowakowski v. New York*, 835 F.3d 210, 218 (2d Cir. 2016).

no later than February 23, 2025. As of the date of this opinion, Ms. Calonge has not filed a reply, despite ample opportunity to do so. Therefore, her Petition is fully submitted.

### III.    LEGAL STANDARD

#### A.    Standard of Relief Pursuant to 28 U.S.C. § 2255

Ms. Calonge's right to collateral relief is governed by 28 U.S.C. § 2255, which provides: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Although § 2255, by its terms, provides grounds for attacking "the sentence," the term "sentence" has been interpreted as a generic term encompassing all of the proceedings leading up to the sentence, including the conviction. *See, e.g., Hall v. United States*, 58 F.4th 55, 58 (2d Cir. 2023) (vacating a conviction under § 2255).

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995), *abrogated on other grounds by Mickens v. Taylor*, 535 U.S. 162 (2002). "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Frady*, 456 U.S. 152, 165 (1982). Even constitutional errors will not

be redressed through a § 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993) (citations omitted); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht's* harmless-error standard to a § 2255 petition).

Section 2255 "may not be used as a substitute for direct appeal." *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) (citing *Frady*, 456 U.S. at 165). Thus, "[i]n general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) (citation omitted). That rule does not generally apply, however, to claims of ineffective assistance of counsel. *See Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) ("[A] petitioner may bring an ineffective assistance of counsel claim [in a § 2255 motion] whether or not the petitioner could have raised the claim on direct appeal." (citing *Massaro v. United States*, 538 U.S. 500, 509 (2003))).

Because Ms. Calonge is proceeding *pro se*, the Court must construe each of her submissions in support of the motion "liberally to raise the strongest arguments it suggests." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

### B.    When an Evidentiary Hearing is Required

Pursuant to Rule 8(a) of the Rules Governing § 2255 Proceedings for the United States District Courts, if a § 2255 motion is not dismissed on preliminary review, the "judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Section 2255(b) requires a district court to hold an evidentiary hearing on a petitioner's claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also McLean v. United States*, Nos. 12-cv-1954, 12-cv-7362, 12-cv-7559, 08-cr-789, 2016 WL 3910664, at *8 (S.D.N.Y. July 31, 2016) ("[A] hearing is not required 'where the allegations are

11

insufficient in law, undisputed, immaterial, vague, palpably false or patently frivolous.'" (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970))).

"To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (citations omitted). "Airy generalities, conclusory assertions and hearsay statements will not suffice . . . ." *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)). Nor will allegations that are "vague, conclusory, or palpably incredible." *Gonzalez*, 722 F.3d at 130. As the Second Circuit has explained:

> The procedure for determining whether a hearing is necessary is in part analogous to . . . a summary judgment proceeding. The petitioner's motion sets forth his or her legal and factual claims, accompanied by relevant exhibits: e.g., an affidavit from the petitioner or others asserting relevant facts within their personal knowledge and/or identifying other sources of relevant evidence. The district court reviews those materials and relevant portions of the record in the underlying criminal proceeding. The Court then determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief. If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made.

*Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal citations omitted). However, "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Id.* at 214.

## IV.    DISCUSSION

### A.    The Court Cannot Conclude that the Petition is Time-Barred

The Court cannot conclude that Ms. Calonge's habeas petition is barred by the one-year statute of limitations applicable to petitions for collateral relief under 28 U.S.C. § 2255(f). AEDPA "imposes a one-year statute of limitations on motions to set aside sentences imposed, *inter alia*, 'in violation of the Constitution or laws of the United States.'" *United States v. Wright*, 945 F.3d 677, 683

(2d Cir. 2019) (citing 28 U.S.C. § 2255(a), (f)), *cert. denied*, 140 S. Ct. 1234 (2020). The one-year statute of limitations runs from the latest of a number of "triggering events" enumerated in the statute. *Rivas v. Fischer*, 687 F.3d 514, 533 (2d Cir. 2012). Here, the latest applicable "triggering event" under § 2255(f) is "the date on which the judgment of conviction [became] final." 28 U.S.C. § 2255(f)(1). "[A] prisoner's conviction becomes final under section 2255 of the AEDPA when the United States Supreme Court denies the prisoner's petition for a writ of certiorari." *Green v. U.S.*, 260 F.3d 78, 84 (2d Cir. 2001).

The Supreme Court denied certiorari on November 13, 2023. As a result, Ms. Calonge's judgment became final on that date. The one-year statute of limitations expired on November 13, 2024. The Petition was sent to the Court by overnight mail on November 12, 2023, but it was not stamped as received by the Clerk of Court until November 19, 2023.

The Court does not believe that the file-stamped date accurately reflects the date on which the Petition was received by the Clerk of Court. "[S]o long as a paper comports with the Local Rules, and there is no other valid basis to reject it, it is considered 'filed' when delivered to the Clerk's Office." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000) (internal citations omitted). After the Petition was filed, the Court was able to view the tracking information for the Petition on the UPS tracking site: the site indicated that the package was delivered on November 13, 2024.[5] In this case, the Court is not willing to rely on the stamped date of November 19, 2024 as the actual date of filing. There is evidence that the package was received by the Court on November 13, 2024.

On these facts, the Court concludes that equitable tolling of the statute of limitations would be appropriate. "The Supreme Court has confirmed that AEDPA's statute of limitations is not jurisdictional and 'does not set forth an "inflexible rule" requiring dismissal whenever its clock has

---

[5] As of the date of this opinion, the UPS website no longer allows one to track the Petition's delivery date.

run.'" *Rivas*, 687 F.3d at 537 (quoting *Holland v. Florida*, 560 U.S. 631, 645 (2010)). "This is because although AEDPA seeks to eliminate delays in the federal habeas review process, it does not do so at the expense of basic habeas corpus principles, or prior law that a petition's timeliness has always been determined under equitable principles." *Wright*, 945 F.3d at 684 (quotations and brackets omitted) (citing *Holland*, 560 U.S. at 649–50). "As a result, even in the wake of AEDPA, a petitioner is entitled to equitable tolling of the one-year statute of limitations if he shows: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Id.* (quoting *Holland,* 560 U.S. at 649).

"To warrant equitable tolling, 'the circumstances of a case must be 'extraordinary.''" *Id.* (quoting *Holland,* 560 U.S. at 652). "When determining what constitutes 'extraordinary' circumstances, . . . 'the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Id.*

"Even when extraordinary circumstances exist, however, a petitioner must demonstrate diligence to qualify for equitable tolling." *Id.* at 685. "The only diligence required for the application of equitable tolling is 'reasonable diligence'—we do not require 'maximum feasible diligence.' Even so, 'we expect even *pro se* petitioners to know when the limitations period expires and to understand the need to file a habeas motion within that limitations period.'" *Id.* (first quoting *Holland v. Florida*, 560 U.S. 631, 653 (2010), then quoting *Doe v. Menefee*, 391 F.3d 147, 177 (2d Cir. 2004)) (internal brackets omitted).

In this case, it appears that Ms. Calonge shipped the Petition to the Court by overnight mail the day before the deadline. She could reasonably anticipate that the Petition would be received by the Court the following day. While Ms. Calonge certainly might have filed her petition sooner, given that she was not incarcerated, sending the Petition by overnight mail to the Court the day before it

14

was due showed reasonable diligence.  The delay in the docketing the Petition appears to have been the result of forces outside of her control—because it appears to have been delivered to the Court timely but was not stamped as having been filed until later.  As a result, even though the Petition was not docketed until after November 13, 2024, equitable tolling would is warranted.

### B.    Claim of Ineffective Assistance of Counsel

Ms. Calonge's motion does not come close to meeting the standard required to show that her counsel was ineffective.  It is well established that the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the familiar two-part test for determining whether an attorney's representation was ineffective.

First, the defendant must demonstrate that the representation "fell below an objective standard of reasonableness."  *Id.* at 688.  Under this first prong of *Strickland*, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  The court examines the reasonableness of counsel's actions, keeping in mind that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

Second, the defendant must demonstrate that the deficient representation prejudiced him.  *Id.* at 694.  The prejudice component of *Strickland* asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Gueits v. Kirkpatrick*, 612 F.3d 118, 122 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice, which we expect will often be so, that course should be followed."

*Strickland,* 466 U.S. at 697. To warrant a hearing on an ineffective assistance of counsel claim, the

defendant need establish only that he has a plausible claim of ineffective assistance of counsel, not

that "he will necessarily succeed on the claim." *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir.

2000) (quoting *United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993)).

Ms. Calonge has not shown that she has a plausible claim of ineffective assistance of

counsel. As the Government argues in the Opposition, the Petition itself contains nothing more

than conclusory assertions regarding her counsels' alleged ineffectiveness. For example, Ms.

Calonge asserts that her counsel failed to investigate potential witnesses or evidence, but provides no

information regarding potential witnesses or evidence that were not explored. She asserts that her

counsel failed to object to inadmissible evidence and to present "crucial aggressive defense

arguments," but she identifies no objections that they ought to have advanced, or "crucial"

arguments that were not presented.

Ms. Calonge's failure to identify any factual basis for her claim is unsurprising. The evidence

presented against Ms. Calonge at trial was overwhelming—among other things, there were logs

showing her deletions from the system after she was terminated. The Court observed Ms. Calonge's

counsel and their conduct at trial; nothing on the record suggests that they were ineffective in their

representation of Ms. Calonge, or that there was any deficiency that would have prejudiced her,

particularly given the overwhelming evidence of her guilt.

In sum, Ms. Calonge's threadbare Petition does not show that she is entitled to relief because her counsel was ineffective. She has presented no facts; only conclusory statements. It is not enough.

### C.    Ms. Calonge's Challenge to the Jurisdiction of the Court is Barred by the Mandate Rule

Ms. Calonge's challenge to the Court's jurisdiction is barred by the so-called "mandate rule." "It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Sanin,* 252 F.3d 79, 83 (2d Cir. 2001) (quoting *Cabrera v. United States,* 972 F.2d 23, 25 (2d Cir. 1992)). "A claim is not barred from being brought in a § 2255 motion where it rests upon a different legal 'ground' for relief than the one previously raised." *U.S. v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009).

Ms. Calonge's contention that the Court lacked jurisdiction over her prosecution "as the crime allegedly occurred in Florida and not in New York," rests on the same legal ground as her appeal. Petition at 6. In her appeal, Ms. Calonge challenged whether venue was appropriate in this district. *See generally United States v. Calonge*, 74 F.4th 31 (2d Cir. 2023). Ms. Calonge, proceeding *pro se*, uses the term "jurisdiction" rather than "venue," but her argument is the same. Ms. Calonge acknowledges in her Petition that she raised the issue in her direct appeal. Petition at 7. The Second Circuit fully considered the issue and resolved it against Ms. Calonge. Therefore, Ms. Calonge is barred from raising the issue again under Section 2255.[6]

---

[6] Were the Court to grant Ms. Calonge the requested relief on this ground and hold that venue was improper in New York, that holding would not prohibit the United States from retrying her for the offense in Florida, where she was physically located when she committed her crime. *See Smith v. United States*, 599 U.S. 236, 239 (2023) ("When a conviction is reversed because of a trial error, this Court has long allowed retrial in nearly all circumstances. We consider in this case whether the Constitution requires a different outcome when a conviction is reversed because the prosecution occurred in the wrong venue and before a jury drawn from the wrong location. We hold that it does not.").

**D.      Ms. Calonge's Other Challenges Lack Merit**

As noted above, Ms. Calonge asserts a third "catch-all" basis for habeas relief.  It repeats her ineffective assistance of counsel contentions, as well as her assertion that the Court lacked jurisdiction over her case.  Those arguments lack merit for the reasons described above.

Ms. Calonge's vague contention that she was not properly "served" because she was not administered *Miranda* warnings during her arrest lacks merit.  Petition at 7.  First, as with the remainder of her Petition, Ms. Calonge presented no facts to support her statement.  There is no evidence that Ms. Calonge was not administered *Miranda* warnings at the time of her arrest.

Second, even if there were such evidence of a *Miranda* violation, the remedy for a violation of *Miranda* is not dismissal of the case.  It is well settled that "the *Miranda* rule is a prophylactic employed to protect against violations of the Self–Incrimination Clause." *United States v. Patane*, 542 U.S. 630, 636 (2004) (plurality opinion) (discussing *Miranda v. Arizona*, 384 U.S. 436 (1966)).  "[A] mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule." *Id.* at 641.  "It follows that police do not violate a suspect's constitutional rights (or the *Miranda* rule) by negligent or even deliberate failures to provide the suspect with the full panoply of warnings prescribed by *Miranda*." *Id.*  "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial." *Id.*  "And, at that point, '[t]he exclusion of unwarned statements . . . is a complete and sufficient remedy' for any perceived *Miranda* violation." *Id.* at 641–642.  No statement by Ms. Calonge was introduced at trial.

**V.      CONCLUSION**

For the reasons stated above, Ms. Calonge's petition is denied.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S.

438, 444–45 (1962).  Ms. Calonge has not made a substantial showing of the denial of a

constitutional right, so the Court denies a certificate of appealability under 28 U.S.C. § 2253.

      The Clerk of Court is directed to terminate the motion pending at Dkt. No. 109 in *United

States v. Medghyne Calonge,* 1:20-cr-523-GHW.  The Clerk of Court is further directed to enter

judgment for the Respondent and to close Ms. Calonge's civil action, *Medghyne Calonge v. United States*,

1:24-cv-8988-GHW.  Finally, the Clerk of Court is directed to mail a copy of this opinion to Ms.

Calonge.

      SO ORDERED.

Dated:  July 29, 2025
New York, New York

                                  _____
                                   GREGORY H. WOODS
                             United States District Judge